**In re Amendment of Clinton County Budget**

*Lewis Steinberg, County Solicitor,* for petitioners.

*George Miller,* respondent intervenor, in propria persona.

BROWN, *P.J.,* February 11, 1980—On December 31, 1979, the Board of Commissioners of Clinton County adopted a county budget for 1980 having total expenditures of $2,467,979.25. Following the first Monday of January, 1980, the new board elected to reopen the former board's budget for the purpose of preparing an amended 1980 county budget. The result of this effort took fruit on January 31, 1980, with a proposed amended budget of $2,899,692.95.[1]

---

1. These budgetary figures are based upon documents provided to the court at the hearing. They are at slight variance with the figures contained in the petition.

Since January 31, 1980, the board in continuing budget workshops has pared some of its proposed expenditures in the amended budget. While the exact amount of total expenditures at the present time is uncertain, the board has assured the court that the total expenditures which it will adopt in the amended budget will not exceed the total expenditures of the original budget by more than ten percent. Thus, the amended 1980 county budget as adopted should not contain total expenditures in excess of $2,714,777.18.

With regard to line items or accounts, the proposed amended budget contained eight such items which were increased in their respective expenditures by more than 25 percent of the amount adopted for each of those items in the original budget. By virtue of the previously mentioned reductions, the proposed expenditures in three of those accounts have been reduced so that any increase is now less than 25 percent of the amount adopted for that account in the original budget. The remaining five accounts are the focus of these proceedings, and a factual discussion of each follows:

## AUDITORS

The 1980 budget as originally adopted provided for expenditures of $22,630. Of this amount $18,900 was allocated for county auditor salaries mandated by law; $3,190 was allocated for other ancillary services connected with the office; $40 was allocated for materials and supplies; and the remaining $500 was allocated for capital outlay.

The amended budget was increased by $12,000 in the area of contracted auditing services, which

represents an increase of 53 percent over the original budget. The explanation for this increment derives from the county's use of Federal revenue sharing funds and the attendant requirement that an outside audit of county finances be conducted in 1980. The bid for this service was received on November 16, 1979 and estimated a total cost for the outside audit as ranging from $10,000 to $12,000. This item was not included in the original budget adopted December 31, 1979.

## MISCELLANEOUS NON-GOVERNMENT

For this account the original 1980 budget allowed $250. The amended budget calls for total expenditures of $4,250, an increase of 1,600 percent. The additional funds are needed to correct deficiencies in a park in Colebrook Township. This would appear to be a leftover project involving the Department of Community Affairs. The county was advised of the obligation by letter dated August 24, 1979, but the item was not included in the original budget. It would also appear that the county stands to be reimbursed $5,000 when the deficiencies are corrected.

## TAX ASSESSMENT OFFICE

This account was allocated $51,800 in the original 1980 budget. The proposed amended budget calls for $67,229.50, an increase of approximately 30 percent. Most of this increase is earmarked for employe services. An employe's position under the CETA Program was terminated on September 7, 1979, and upon request of the department head, the

position was filled around January 4, 1980. No further details were submitted as to the need for the position, the salary, or whether the position was a legally mandated one. The documents provided to the court did not include any budgetary information on this account.

## ENGINEERING AND MAPPING OFFICE

The sum of $14,848.25 was set aside for this account in the original 1980 budget. The proposed amended budget allots $25,992.50 for the office, an increase of approximately 75 percent. These additional expenditures are to be used to engage the services of an engineer for the county. This course of action has resulted from two separate needs. The first of these is the recently enacted Storm Water Management Act of October 4, 1978, P.L. 864, 32 P.S. §680.1 et seq. The county has been advised by DER that its legal obligations under that statute will require the need of engineering services. In addition, the county is involved in litigation over the abandonment of the Beech Creek bridge which also requires engineering services. The county at the present time does not employ an engineer.

## GRANTS

The original 1980 budget provided for total expenditures of $233,781.25 under this account. The proposed amended budget accelerated this figure to $378,737.40, an increase of approximately 62 percent; a subsequent elimination of a $20,000 grant to the Labor Management Committee reduced the new allocation to $358,737.40, thus lowering the

percentage increase over the original budget to approximately 53 percent.[2]

While there has been considerable activity in the adding, deleting, decreasing, and increasing of grants, the board has chosen to focus on two of the larger grants in these proceedings. The first of these is a new grant of $24,000 to the Clinton County Solid Waste Authority, and the second is an increase from $61,000 to $244,100 of the grant to Susque View Home, Inc.

In both of these instances, the board is obligated by prior agreement to underwrite or fund deficits and obligations of these entities. With regard to the Solid Waste Authority, the board was advised at a meeting on January 29, 1980, of the $24,000 deficit which the court understands to be the payment on a note which will be needed in 1980. The prior commissioners had apparently signed this note as a guarantor. The Susque View situation came to light at a meeting in late January, 1980, followed by a letter from the home's board of directors requesting $244,100 for 1980, because of anticipated deficits. Again by prior agreement, the commissioners are obligated to fund such deficits.

### DISCUSSION AND CONCLUSIONS OF LAW

Preliminarily, two issues raised by respondent must be decided. The first relates to the initial fail-

2. It is difficult to analyze and compare the original and amended budgets with regard to grants since the original budget includes $75,000 for 1980 salary increases as a grant. This designation is difficult to follow unless intended as an exercise in satire in characterizing salary increases. The amended budget does not include such salary increases under grants so that in reality, the actual or real increase in grants from the original budget to the amended budget is closer to $200,000 rather than the $124,956 that is indicated.

ure of one of the commissioners, Mr. Kephart, to sign the petition presented to the court.[3] Mr. Kephart did sign the acknowledgement for the petition. Since at least two of the commissioners did place their signatures on the petition, the court has no difficulty in hearing the matter, and finds that the omission of Mr. Kephart's signature does not require a dismissal of the proceedings.

The second matter relates to the input of the present board into the original 1980 budget. Only one member of the present board sat with the board when the original budget was adopted. The other two members have taken office since that time. While the two new members sat in on the prior budget meetings, they obviously had no legal standing to vote on the original budget as their terms of office had not yet commenced. In any event, section 1782.1 of The County Code of August 9, 1955, P.L. 323, as amended, 16 P.S. §1782.1, in authorizing an amended budget does not require a change in identity on the board before such an amended budget can be adopted. There is nothing in that statute which would prevent a board whose makeup had not changed from one year to the next from amending its own budget. Therefore, there is little question that the present board has the authority to amend the 1980 budget.

That leaves for resolution the central issue of whether the five accounts previously discussed can be adopted as a part of the amended 1980 county budget. Since all five provide for expenditures that exceed the original budget allocations by more than

---

3. Subsequently, Mr. Kephart caused an affidavit to be filed stating that this was an inadvertent failure, and that he was in fact joining with the other two commissioners in the petition.

25 percent, each is at variance with the provisions of section 1782.1 of The County Code which require such increases to be 25 percent or less of the expenditure originally adopted. In setting forth this limitation, section 1782.1 states: "No such proposed amended budget shall be revised upward in excess of. . . ."

Petitioners contend that the use of the word "shall" in section 1782.1 is directory only and not mandatory, and that accordingly the board of commissioners has the authority and discretion to exceed the 25 percent limits. After considering this argument and for the reasons hereinafter discussed, the court must reject it and conclude that the percentage limitations in section 1782.1 are mandatory in the absence of a conflicting legal obligation that would require the expenditures of a particular account to exceed those limitations.

In rejecting petitioner's argument, it is important to begin with the observation that the legislature has demonstrated a reasonably clear intent to limit increased expenditures in an amended budget under section 1782.1. Courts should not lightly disturb that intent out of due consideration for traditional concepts of separation of powers. Ordinarily, the use of the word "shall" in a statute is construed by the courts as creating a mandatory duty, and it is only in rare cases involving matters of time or form that the word "shall" is construed as creating only a directory duty: Prichard v. Willistown Township School Dist., 394 Pa. 489, 147 A. 2d 380 (1959). The percentage limitations in section 1782.1 are clearly matters of substance and not mere matters of time or form susceptible to the label that they are directory only.

In making this determination, full consideration has been given to the many problems facing the commissioners in trying to chart an appropriate fiscal course for the county. Nevertheless, that course must be laid out within the perimeters of the law as specified by the legislature. The ostensible legislative intent in section 1782.1 is to place a ceiling on expenditures in county budgets amended after December 31. Such a ceiling on expenditures will ordinarily have a carry-over effect on tax rates so that even though section 1782.1 is not a tax statute in itself, its impact on taxes is almost unavoidable. In this context it is probably a fair observation that the legislature's intent in imposing ceilings on budget increases embraced some measure of protection for the taxpayer. That being the case, whatever the law requires to be done for the protection of the taxpayer is usually mandatory and cannot be regarded as merely directory: Scranton v. O'Malley Mfg. Co., 341 Pa. 200, 19 A. 2d 269, 271 (1941).

Having concluded that the limitations of section 1782.1 are mandatory and cannot be generally ignored either by the court or the commissioners, a further issue must be considered. With regard to some of the questioned accounts, the evidence suggests that the increases are required because of the county's legal obligations for those amounts. To the extent this is true, a dilemma exists wherein the county is caught between two conflicting forces. On the one side it must obey the law and on the other it must live up to its required legal obligations.

These unusual circumstances threaten a breakdown in the processes of government, and relief

from the statutory restrictions on budget increases must be available. It is doubtful that the legislature would intend to perpetrate such a result. Therefore, as to those accounts for which the county is legally obligated to make expenditures which total more than the total expenditures authorized by section 1782.1, the amended budget may exceed the limits set by section 1782.1. This exception must be narrowly construed and confined to required expenditures only. Discretionary expenditures, no matter how meritorious, are still prohibited by section 1782.1 to the extent they exceed its limitations.

There are three accounts which fall into this category. They include: (1) Auditors, (2) Miscellaneous Non-government, and (3) Engineering and Mapping Office.

As to the Auditors, $30,900 of the proposed amended budget of $34,630 is required by law for legislatively mandated salaries and a required outside audit. The remaining $3,730 represents what would appear to be ordinary and necessary operating and capital expenses for the year. As such the entire budget of $34,630 should be approved.

With regard to Miscellaneous Non-government, the county has a legal obligation to correct the deficiencies in the park in Colebrook Township. It has allocated $4,000 for this task. Since this involves a legal obligation, the amended budget in the amount of $4,250 will be approved.

The Engineering and Mapping Office account originally called for a budget of $14,848.25. Of this amount $13,973.25 was for existing salaries and the balance was for operating expenses and materials. The proposed amended budget totals $25,992.50. Almost all of this increase is allocated for the required services of an engineer in conjunc-

tion with the Storm Water Management Act and the Beech Creek bridge project. As such the amended budget requires approval as submitted.

With regard to the Tax Assessment Office, the increased budget has been predicated upon the filling of an unfilled employment position. Few details have been provided for this action, and nothing was presented to suggest that the increased expenditures are mandated. Thus, this account is limited in its increment to 25 percent of the amount originally budgeted, which allows for a total budget of $64,750 rather than the requested $67,229.50.

The account for Grants is a troublesome one. The commissioners have suggested that the increase of $24,000 for the Solid Waste Authority and the increase of $183,100 for Susque View represent legal obligations that they must meet. While the court does not doubt that the commissioners are bound by written agreement to support both of these entities, the facts as presented do not establish the existence or extent of those liabilities. In both instances there is nothing more than a bold assertion as to the dollar amounts involved. A fuller inquiry as to the specifics of the proposed operating deficits might have been helpful in verifying those deficits as well as exploring whether the commissioners themselves could do anything to lessen them so that any resulting legal obligation might be likewise lessened.

There are also an additional $90,637.40 in grants that are apparently not representative of county legal obligations and are thus discretionary grants. In determining whether a proposed account under the amended budget is exempt from the limitations of section 1782.1 as representing legally required or otherwise necessary expenditures, all of the expenditures will be reviewed. Accordingly, the court

concludes that a clear case has not been established that the amended expenditures for Grants is allowable. Under the provisions of section 1782.1, the court finds that the account expenditures may not exceed $292,226.43.

## ORDER

And now, February 11, 1980, based upon the foregoing opinion, it is hereby ordered that the Commissioners of Clinton County be permitted to adopt an amended 1980 county budget to include the following accounts which are approved as to the amounts indicated:

| | |
|---|---|
| Auditors | $  34,630.00 |
| Miscellaneous Non-government | $    4,250.00 |
| Engineering and Mapping Office | $  25,992.50 |
| Tax Assessment Office | $  64,750.00 |
| Grants | $292,226.43 |